# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR HUGO MARTINEZ,<br><br>Plaintiff,<br><br>v.<br><br>C. LAWLESS, et al.,<br><br>Defendants.<br>_____/ | CASE NO. 1:12-cv-01301-LJO-SKO (PC)<br><br>**FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT BE GRANTED**<br><br>(Doc. 34)<br><br>**OBJECTIONS DUE: 14 DAYS** |

## I. INTRODUCTION

Plaintiff Victor Hugo Martinez ("Plaintiff") proceeds in this action pro se and *in forma pauperis* with claims against four correctional officers, R. Molina ("Molina"), M. Morse ("Morse"), C. Chamberlin ("Chamberlin"), and S. Herrera ("Herrera") (collectively, "Defendants"), for alleged violations of Plaintiff's Eighth Amendment rights. On April 6, 2015, Defendants filed a motion for partial summary judgment, which has not been opposed. (Doc. 34.) For the reasons set forth below, the Court RECOMMENDS that Defendants' motion for partial summary judgment be GRANTED.

## II.   BACKGROUND

**A.   Procedural History**

    **1.   First Amended Complaint**

On April 11, 2013, Plaintiff filed a First Amended Complaint ("FAC"), which is the operative complaint in this action. (Doc. 8.) Plaintiff is an inmate at Kern Valley State Prison ("KVSP"). Plaintiff alleges that on January 6, 2011, he was pepper sprayed by Defendants Morse, Herrera, Chamberlin, and Molina while trying to remove the jam in his cell door and was then dragged out of his cell and assaulted by Defendants. (Doc. 8, p. 3.) As he was "blinded by chemical agents from the pepper spray and in pain from being beat[en,] there wasn't any way to say who [of the four officers] was specifically assaulting [him]." (Doc. 8, p. 3.) Plaintiff alleges there were four correctional officers present, and he felt punches, kicks, and knees assaulting his body from all four officers. Plaintiff also alleges that each officer had a duty to protect him from the other officers present and to stop them from assaulting him, but each officer failed to do so.

    **2.   Second Screening Order**

On December 17, 2013, the Court screened Plaintiff's FAC pursuant to 28 U.S.C. § 1915A and determined Plaintiff had articulated viable claims against Defendants Morse, Herrera, Chamberlin, and Molina for excessive force and for failure to protect under the Eighth Amendment, and the complaint was served on Defendants. (Doc. 9.) This case proceeds against Defendants Morse, Herrera, Chamberlin, and Molina on these two theories of violation of the Eighth Amendment.

    **3.   Defendants' Motion for Partial Summary Judgment and Plaintiff's Failure to File an Opposition**

Defendants filed a motion for partial summary judgment on April 6, 2015. (Doc. 34.)[1] On June 15, 2015, Plaintiff was ordered to file an opposition or statement of non-opposition within 21 days. (Doc. 37.) On July 7, 2015, Plaintiff filed a motion seeking a 45-day extension of time to respond to Defendants' motion for partial summary judgment, and Plaintiff was granted until

---

[1] Along with this motion, Defendants served Plaintiff with the required notice pursuant to *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc). (Doc. 34-8.)

2

September 2, 2015, to file a response to Defendants' motion. (Docs. 38, 39.) On August 31, 2015, Plaintiff sought another extension of time to file a response to Defendants' motion, which was granted. On September 29, 2015, after Plaintiff had twice been granted extensions of time to file his response to Defendants' motion, the Court ordered Plaintiff to file a response within thirty days. Plaintiff was warned that no further extensions of time would be granted and if he failed to respond to the motion, it would be deemed submitted. Local Rule 230(*l*).

On November 16, 2015, Plaintiff filed a notice stating that he mailed a response and request for continuance pursuant to Rule 56(d) on October 25, 2015. Fed. R. Civ. P. 56(d). The filing was returned to him on November 9, 2015, due to an error he attributed to the law librarian, and he re-sent the filing. On November 23, 2015, the Court received and filed Plaintiff's request for a denial or continuance pursuant to Rule 56(d) and a supporting declaration. Defendants did not file a response. Local Rule 230(*l*).

On December 28, 2015, the Court issued an order denying Plaintiff's motion for a continuance and an extension of time to respond to Defendants' motion. The Court noted the deadline for the completion of all discovery was December 17, 2014, and that because the discovery deadline had expired more than one year earlier, Plaintiff was required to show good cause to modify the schedule and reopen discovery. As Plaintiff had not established due diligence, he was not entitled to a modification of the scheduling order, and he was ordered to file a response to Defendants' motion within 21 days. Plaintiff was cautioned that Defendants' motion for partial summary judgment would be submitted on the record pursuant to Local Rule 230(*l*) within 21 days of the Court's order, or upon receipt of Plaintiff's response to the motion, whichever occurred first. Plaintiff's response was therefore due on or before January 18, 2016, but Plaintiff failed to file any opposition. Defendants' motion, therefore, was submitted on the record with no opposition.

**B.      Factual Background**

    **1.      Undisputed Facts**

On January 6, 2011, a team of four officers from KSVP's gang investigations unit went to Facility A, Building 6 to conduct a search in cell 225. (Doc. 34-2, Statement of Undisputed Facts

("SUF")). The officers were there to search for evidence relevant to an investigation into the Mexican Mafia's criminal gang activities. (SUF 4.) The search team included Sergeant Molina, Officer Herrera, Officer Chamberlin, and Officer Morse. (SUF 5.) Plaintiff and inmate Morris Rebollo ("Rebollo") were assigned to cell 225. (SUF 6.)

As Defendants neared cell 225, Molina ordered the building's control booth officer to open the cell door. (SUF 7.) The door slid open about six inches before jamming. (SUF 8.) The door jammed because Plaintiff had placed a rubber wedge on the tracks to keep the door from sliding open. (SUF 9.) Plaintiff got down from his bunk and moved towards the door. (SUF 10.) Herrera, who was outside the cell, grabbed the door handle and forced the door open. (SUF 11.) As Plaintiff was standing in the cell entryway, Morse pepper sprayed him in the face and upper torso. (Doc. 34-4, Chamberlin Decl, ¶ 6; Doc. 34-6, Molina Decl., ¶ 7; Doc. 34-7, Morse Decl., ¶ ¶ 6.) Plaintiff was blinded and unable to see what happened afterwards. (Doc. 34-3, Martinez Depo., 52:23-25 (Q. "Do you know at the point that you got pepper sprayed where your cellee was?" A. "No. I was blinded by the pepper spray."); 54:23-25 (Q. "At any point during this incident did you see your cellmate go over to the toilet?" A. "I was pepper sprayed. I couldn't see nothing afterwards.").)

**2.    Disputed Facts**

The parties dispute what happened next. Defendants maintain Morse and Herrera ordered Plaintiff to "get down" in a prone position, but Plaintiff refused and instead tried to prevent the door from opening any further. (Doc. 34-6, Molina Decl., ¶ 5; Doc. 34-4, Chamberlin Decl., ¶ 5; Doc. 34-5, Herrera Decl., ¶ 6; Doc. 34-7, Morse Decl., ¶ 4.) Rebollo stood up from the bottom bunk, reached for an item, and then ran towards the toilet, at which time Herrera applied pepper spray to Rebollo's face and body, and Rebollo threw an unknown object into the toilet. (Doc. 34-5, Herrera Decl., ¶¶ 5-7; Doc. 34-6, Molina Decl., ¶¶ 6-7; Doc. 34-7, Morse Decl., ¶¶ 5-7.) At this time, Plaintiff also turned towards the toilet and away from Morse in an attempt to flush an object. (Doc. 34-6, Molina Decl., ¶ 8; Doc. 34-7, Morse Decl., ¶ 7.) Herrera then grabbed Plaintiff by his left shoulder, Plaintiff turned around and grabbed Herrera around the waist with both of his arms, buried his head and shoulder against Herrera's hip area (like a football tackle), and Plaintiff drove

4

Herrera backwards onto the tier outside the cell. (Doc. 34-7, Morse Decl., ¶ 8; Doc. 34-6, Molina Decl., ¶ 9; Doc. 34-5, Herrera Decl., ¶ 8; Doc. 34-4, Chamberlin Decl., ¶ 8.)

Morse determined this was an unacceptably dangerous situation that required him to take immediate action, and he struck Plaintiff with his empty pepper spray canister to stop the attack on Herrera. (Doc. 34-7, Morse Decl., ¶ 8.) Although Morse struck Plaintiff in the back of the head, this did not stop the attack. (Doc. 34-7, Morse Decl., ¶ 8.) Morse then grabbed Plaintiff by his shoulders while Herrera grabbed Plaintiff in his back area, and Plaintiff was forced into a prone position on the tier. (Doc. 34-7, Morse Decl., ¶ 8.) Although Plaintiff was given several commands to place his hands behind his back, he refused to comply. (Doc. 34-7, Morse Decl., ¶¶ 9-10; Doc. 34-5, Herrera Decl., ¶ 9.) Eventually Morse and Herrera were able to get Plaintiff's arms placed behind his back and apply handcuffs. (Doc. 34-7, Morse Decl., ¶ 9; Doc. 34-5, Herrera Decl., ¶ 9.) Morse conducted a clothed body search, and Herrera and Morse escorted Plaintiff to decontaminate him from the pepper spray and to be seen by medical staff. (Doc. 34-7, Morse Decl., ¶¶ 11-13; Doc. 34-5, Herrera Decl., ¶¶ 10-11.) Molina and Chamberlin escorted inmate Rebollo to the program area to do the same. (Doc. 34-6, Molina Decl., ¶ 15-16; Doc. 34-4, Chamberlin Decl., ¶¶ 10-11.)

After he was pepper sprayed, Plaintiff alleges he was dragged out of the cell and assaulted by Defendants and that he never charged the officers. Plaintiff testified at his deposition that when the cell door began to open, he came to the door and tried to remove the piece of rubber wedged in the door. (Doc. 34-3, Martinez Depo., 46:20-47:8.) Defendants then tried to force the door open. No words were exchanged during this time, and Plaintiff was then pepper sprayed by Morse. (Doc. 34-3, Martinez Depo., 50:10-51:3, 53:1-3.) Plaintiff was dragged out of his cell and beaten for approximately 10 minutes. (FAC, p. 3.)

### III. DISCUSSION

**A. Legal Standard – Summary Judgment**

Summary judgment is appropriate when the pleadings, disclosure materials, discovery, and any affidavits provided establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one

that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party." *Id.* (internal quotation marks and citation omitted).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). The exact nature of this responsibility, however, varies depending on whether the issue on which summary judgment is sought is one in which the movant or the nonmoving party carries the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Cecala v. Newman*, 532 F. Supp. 2d 1118, 1132 (D. Ariz. 2007). If the movant will have the burden of proof at trial, it must demonstrate, with affirmative evidence, that "no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. In contrast, if the nonmoving party will have the burden of proof at trial, "the movant can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Id.* (citing *Celotex*, 477 U.S. at 323).

If the movant satisfies its initial burden, the nonmoving party must go beyond the allegations in its pleadings to "show a genuine issue of material fact by presenting *affirmative evidence* from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "[B]ald assertions or a mere scintilla of evidence" will not suffice in this respect. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

In resolving a summary judgment motion, "the court does not make credibility determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. That remains the

6

province of the jury or fact finder. *See Anderson*, 477 U.S. at 255. Instead, "[t]he evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Id.* Inferences, however, are not drawn out of the air; the nonmoving party must produce a factual predicate from which the inference may reasonably be drawn. *See Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987).

When dealing with excessive force claims, summary judgment is rarely appropriate. "Because [the excessive force inquiry] nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Liston v. Cty. of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) (as amended) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury.").

**B.     Defendants' Arguments for Partial Summary Judgment**

Defendants contend that although the official reports of the incident on January 6, 2011, uniformly contradict Plaintiff's version of events and thus establish a factual dispute, they are nonetheless entitled to partial summary judgment on Plaintiff's excessive force claim against Defendants Chamberlin and Molina because the undisputed evidence establishes neither official used any force on Plaintiff. Plaintiff conceded in his deposition that he was blinded by pepper spray and could not see either official kick, punch, or hit him. Plaintiff testified he never saw Chamberlin on top of him, and he was not "100 percent sure as to what role [Molina] played, because [Plaintiff] was pepper sprayed." (Doc. 34-3, Martinez Depo., 79:25-80:14.)

Similarly, Plaintiff's failure-to-protect claim against Defendants Herrera and Morse should be dismissed because, although Herrera and Morse admit they applied force to Plaintiff during the incident, Chamberlin and Molina did not apply any force to Plaintiff at any time and thus Chamberlin and Molina's action – or lack thereof – did not require intervention from Herrera or Morse. In other words, Herrera and Morse had no duty to protect Plaintiff from Chamberlin and Molina, who had no contact with Plaintiff and thus could not have presented any threat of harm to Plaintiff.

7

**C.    Defendants' Motion for Partial Summary Judgment Should be Granted**

    **1.    Plaintiff's Claims Against Chamberlin and Molina for Excessive Force Should Be Dismissed**

Where a prison inmate is claiming a violation of his Eighth Amendment right to be free from cruel and unusual punishment based on use of excessive force, the proper inquiry is whether the force resulted in the unnecessary and wanton infliction of pain or suffering. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To determine whether the force used was wanton and unnecessary "the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. In making this inquiry, the court considers five factors: (1) the extent of the injury suffered by the inmate, (2) the need for application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response. *Id.* (citing *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). Although there is no need to show a serious injury resulted from the force, the lack of such an injury is relevant to the determination. *Id.* at 7-9; *see also Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

Defendants argue that Chamberlin and Molina did not use any force against Plaintiff on the day in question and thus the excessive force claim against them should not proceed to a jury. In support of their argument, Molina submitted a declaration in support of Defendants' motion indicating he

> did not make physical contact with inmate Martinez on January 6, 2011. My role in the incident at cell 225 was limited to monitoring Officers Herrera and Morse as they subdued inmate Martinez and placed him in handcuffs, and my own role in handcuffing inmate Rebollo and escorting him to the Facility A program office.

(Doc. 34-6, Molina Declaration, ¶ 18.) Chamberlin submitted a similar declaration statement:

> I did not make physical contact with [Plaintiff] on January 6, 2011. My role in the incident at cell 225 was limited to monitoring inmate Rebollo and placing him in handcuffs when the situation was stabilized.

(Doc. 34-4, Chamberlin Decl., ¶ 13.)

8

In his complaint, which was submitted under penalty of perjury, Plaintiff alleges all four Defendants "dragged [him] out of [his] cell and assaulted [him]."  (Doc. 8, p. 3.)  In the FAC, Plaintiff acknowledges that he was "blinded" by the chemical agents in the pepper spray and was unable to identify who specifically assaulted him, but contends there were four correctional officers present, and he "felt punches, kicks, and knees assaulting [his] body from all four officers during the beating."  (Doc. 8, p. 3.)  Plaintiff maintains "all four (4) defendants began assaulting [him] causing injury to [his] head."  (Doc. 8, p. 6.)

During his deposition, Plaintiff confirmed that during the event, he was blinded by the pepper spray and could not see the officers who kicked, punched, or hit him:

> Q. Did you come to find out that Officer Chamber[lin] engaged in any of these acts of excessive force?
> A. Yes.
> Q. Okay.  What acts of excessive force were by him?
> A. He was, he was one of the ones on top of me.
> Q. What do you mean, one of the ones what do you mean on top of you?
> A. There was two officers, around two officers on top of me handcuffing me.
> Q. Okay.
> A. While all this was going on.
> Q. And Chamber[lin] was one of them?
> A. Yes.
> Q. And did you find that out from your cellmate?
> A. Yes.
> Q. Did you ever see that it was Chamber[lin] who was on top of you?
> A. No.
> Q. And how about Molina, what was his role in all of this?
> A. Excuse me, you're asking me if I personally seen him on top of me?
> Q. Yes.
> A. No.  I never, I didn't see him.
> . . .
> Q. . . . As far as Officer Herrera, you did not see what he did.  That information came from your cellmate, correct?
> A. Yes.
> Q. And that would be the same for Chamber[lin], right?
> A. Yes.
> Q. Okay.  So the only one I guess I'm not clear on is Molina.  Did your cellmate tell you that Molina handcuffed you or was involved in this at all?
> A. Well, when he came in, when he came in for the in camera, after he left, that's when –
> Q. Right.
> A. – that's when I asked him that, hey, who was all involved in that.  That's when I learned that Molina was one of them, was also involved in being on top of me, kicking me, punching me and all that.
> Q. But did you – someone told you that?
> A. Yes. My cellee did.

9

1  (Doc. 34-3, Martinez Depo., 27:6-28:8 – 30:11-31:4.)

2  Plaintiff's FAC is verified and his allegations function as declarations to the extent the allegations are based on his personal knowledge of facts admissible in evidence. *Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004). However, Plaintiff's statements in the FAC do not override the statements he made in his deposition. *Block v. City of Los Angeles*, 253 F.3d 410, 419, n. 2, (9th Cir. 2001) (citing *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975)). It is clear from his deposition testimony that Plaintiff, unable to see after being pepper sprayed, does not have personal knowledge of who allegedly assaulted him. Plaintiff conceded he identified the Defendants who allegedly assaulted him after he was pepper sprayed based only on what his cell mate told him, not based on his personal knowledge. Federal Rule of Procedure 56(c)(4) provides that a declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Federal Rule of Evidence 602 provides that "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Plaintiff's conceded inability to see anything after he was pepper sprayed renders his FAC allegations about which Defendant assaulted him without foundation and not based on his personal knowledge. Thus, the allegations of the FAC are not creditable, admissible evidence sufficient to dispute Defendants' uniform declarations that Molina and Chamberlin did not make any physical contact with Plaintiff during the January 6, 2011, incident.

Given Plaintiff's deposition testimony, the FAC allegations regarding who applied force to him after Morse pepper sprayed him are not based on personal knowledge as Plaintiff conceded he was blinded by the pepper spray. As a result, Plaintiff has no evidence to support his excessive force claims against Chamberlin and Molina -- the uncontradicted evidence is that Chamberlin and Molina used no force on Plaintiff during the January 6, 2011, incident. *Celotex Corp.*, 477 U.S. at 323-25. (summary judgment appropriate when nonmoving party fails to make a sufficient showing to establish an essential element on which that party will bear the burden of proof at trial).

### 2. Claims Against Herrera and Morse for Failure to Protect Should be Dismissed

[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000) (internal quotation marks omitted). To establish a violation of this duty, the prisoner must show that prison officials were "deliberately indifferent to a serious threat to the inmate's safety." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The failure of prison officials to protect inmates from excessive use of force by their fellow officers may rise to the level of an Eighth Amendment violation when (1) the deprivation is "objectively, sufficiently serious" and (2) the prison officials had a "sufficiently culpable state of mind," acting with deliberate indifference. *Id.* at 834. Thus, "there is both an objective and subjective component to an actionable Eighth Amendment violation." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002).

The objective element requires that "the deprivation alleged must be 'sufficiently serious.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." *Id.* The subjective standard of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835 (citation omitted). The requisite state of mind falls "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. Mere negligence on the part of prison staff is not sufficient to prove deliberate indifference. *Id.* In other words, acting or failing to act with deliberate indifference is "the equivalent of recklessly disregarding" a substantial risk of serious harm to the inmate. *Id.*

Because the undisputed evidence shows that Chamberlin and Molina did not use *any* force against Plaintiff that could have required intervention from Herrera and Morse, Defendants contend there is no evidence to support a failure-to-act claim against Herrera and Morse.

As discussed above, because there is no admissible evidence Molina and Chamberlin used any force against Plaintiff or made any physical contact with him during the incident, there was no basis for Herrera and Morse to intercede on Plaintiff's behalf. *Cf. Cunningham*, 229 F.3d at 1289

(officers liable when their fellow officers violate the constitutional rights of a suspect or citizen). As such, Plaintiff's claims against Herrera and Morse for failure-to-protect should be dismissed.

### IV. CONCLUSION AND RECOMMENDATION

For the reasons set forth above, Defendants' motion for partial summary judgment should be granted: Plaintiff's claim of excessive force against Chamberlin and Molina should be dismissed and Plaintiff's claim for failure-to-protect against Herrera and Morse should be dismissed. This case should proceed to trial only on Plaintiff's excessive force claims against Herrera and Morse and Plaintiff's failure-to-protect claims against Chamberlin and Molina.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **March 2, 2016**                             **/s/ Sheila K. Oberto**
                                              UNITED STATES MAGISTRATE JUDGE